989 F.2d 1564
 Fed. Sec. L. Rep. P 97,414
Julius GRAY; Leroy William Rodewald, Plaintiffs-Appellants,
United States of America, Intervenor,
v.
FIRST WINTHROP CORPORATION; Winthrop Financial Co. Inc.;
General Electric Company; Peat Marwick Main &
Company, Defendants-Appellees.
Julius GRAY; Leroy William Rodewald, Plaintiffs-Appellants,
United States of America, Intervenor,
v.
FIRST WINTHROP CORPORATION, INC. et al.; Winthrop Financial
Co. Inc.; Peat Marwick Main & Company,
Defendants-Appellees.
Stephen COPE; France Bolei; Paul Costa; Donald Fuller, on
behalf of themselves and the class they represent,
Plaintiffs-Appellants,
United States of America, Intervenor,
v.
PRICE WATERHOUSE; Kenneth Leventhal & Company; Stephen
Roulac, Defendants-Appellees.
Jerry SIMON, Donna Simon; Herman Amaral; Rose Amaral; Roy
Banogli; Robert Kittle; Linda Kittle, et al.,
Plaintiffs-Appellants,
United States of America, Intervenors,
v.
Neil A. ORSI; Gene Koon; E. Leo Bullock; Provident Mutual
Life Securities Co., Defendants-Appellees.
 Nos. 91-16907, 92-15986, 92-15901 and 92-16193.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 10, 1993.
Decided April 7, 1993.
 
 James M. Finberg, Lieff, Cabraser & Heimann, San Francisco, CA, for plaintiffs-appellants in Nos. 91-16907 and 92-15986.
 Robert S. Molloy, Cooley, Manion, Moore & Jones, Boston, MA, David C. Phillips, Goldstein & Phillips, San Francisco, CA, for defendants-appellees Winthrops in Nos. 91-16907 and 92-15986.
 Boake Christensen, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, and Theodore B. Olson, Gibson Dunn & Crutcher, Washington, DC, for defendant-appellee KMPG Peat Marwick in Nos. 91-16907 and 92-15986.
 Douglas Letter, U.S. Dept. of Justice, Washington, DC for intervenor U.S. and amicus S.E.C. in Nos. 91-16907 and 92-15986.
 Craig C. Corbitt, Furth, Fahrner & Mason, San Francisco, CA, for plaintiffs-appellants in No. 92-15901.
 Lawrence W. Keeshan and Scott Fink, Gibson, Dunn & Crutcher, San Francisco, CA, for defendant-appellee Price Waterhouse in No. 92-15901.
 Edwin C. Shiver, Zankel & McGrane, San Francisco, CA, for defendants-appellees Stephen E. Roulac & Stephen Roulac & Co. in No. 92-15901.
 William S. Freeman, Cooley Godward Castro Huddleson & Tatum, Palo Alto, CA, for defendant-appellee Kenneth Leventhal & Co. in No. 92-15901.
 Douglas Letter, U.S. Dept. of Justice, Washington, DC for intervenor U.S. and amicus S.E.C. in No. 92-15901.
 David H. Schwartz, Hill, Schwartz, Stenson, San Francisco, CA, for plaintiffs-appellants in No. 92-16193.
 Stephen Stublarec, Pillsbury Madison & Sutro, San Francisco, CA, for defendant-appellee PML in No. 92-16193.
 Douglas Letter, U.S. Dept. of Justice, Washington, DC for intervenor U.S. and amicus S.E.C. in No. 92-16193.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN, FERNANDEZ, and T.G. NELSON, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 Gray, Cope and Simon present one common issue: the constitutionality of section 27A of the Securities Exchange Act of 1934 ("1934 Act"). Appellees argue that section 27A is unconstitutional in several respects: (1) it violates the separation of powers doctrine, as interpreted in United States v. Klein, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1872), by directing a rule of decision in pending cases without changing the underlying substantive law; (2) it violates the separation of powers doctrine by impermissibly interfering with the effect of final judgments; (3) it contradicts the Supreme Court's holding in James B. Beam Distilling Co. v. Georgia, --- U.S. ----, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), which Appellees claim is a constitutionally-based rule providing that the Court's decisions must be applied evenly to all pending cases; and (4) it violates the equal protection component of the Due Process Clause of the Fifth Amendment. The district courts held section 27A unconstitutional. On this issue,[1] we reverse.
 
 BACKGROUND
 
 2
 These cases involve federal securities fraud claims under section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and S.E.C. Rule 10b-5. Because the private 10b-5 suit is a judicially created "implied right of action," section 10(b) and Rule 10b-5 contain no statute of limitations provision. At the time the Appellants here filed their complaints, the law of this circuit applied to these cases a statute of limitations period derived or "borrowed" from state law. See Reeves v. Teuscher, 881 F.2d 1495, 1500 (9th Cir.1989).
 
 
 3
 On June 20, 1991, however, in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Supreme Court resolved a split among the circuits by declaring a national, uniform statute of limitations for the § 10(b) implied right of action: Rule 10b-5 actions "must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." Id. at ----, 111 S.Ct. at 2782. The Court retroactively applied its new rule to the parties in Lampf and dismissed the claims as untimely. Id. Read in conjunction with James B. Beam Distilling Co. v. Georgia, --- U.S. ----, ----, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481 (1991) ("[W]hen the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata."), Lampf requires the retroactive application of its new statute of limitations rule to all pending cases. Because these three cases were pending when Lampf and Beam were handed down, Lampf 's new rule was applied and these actions were dismissed as untimely.
 
 
 4
 In response to the Court's decision in Lampf, Congress enacted section 27A of the 1934 Act, 15 U.S.C. § 78aa-1. Concerned that "Lampf changed the rules in the middle of the game for thousands of fraud victims who already had suits pending," 137 Cong.Rec. 18,624 (daily ed. Nov. 27, 1991) (Sen. Bryan), Congress passed this legislation to "return plaintiffs and defendants to exactly the position that they had on June 19, 1991"--the day before the Court announced its decisions in Lampf and Beam. Section 27A provides:
 
 
 5
 (a) Effect on pending causes of action. The limitation period for any private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.
 
 
 6
 (b) Effect on dismissed causes of action. Any private civil action implied under section 78j(b) of this title that was commenced on or before June 19, 1991--
 
 
 7
 (1) which was dismissed as time barred subsequent to June 19, 1991, and
 
 
 8
 (2) which would have been timely filed under the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as
 
 
 9
 such laws existed on June 19, 1991, shall be reinstated on motion by the plaintiff not later than 60 days after the date of enactment of this section [enacted Dec. 19, 1991].
 
 
 10
 15 U.S.C. § 78aa-1.
 
 
 11
 The purpose and effect of section 27A were to negate on fairness grounds the retroactive application of Lampf 's new rule. Section 27A legislatively overrides the application of the retroactivity principles the Court announced in Beam.
 
 
 12
 In the three cases before us, the district courts denied plaintiffs' motions for reinstatement under section 27A on the grounds that section 27A was unconstitutional, although on different theories. In both Cope v. Price Waterhouse and Simon v. Orsi, the same district court concluded that section 27A was unconstitutional because (1) it violated Klein's separation of powers principles by directing a result in pending cases without changing the underlying substantive law; (2) it impermissibly reversed final judgments of federal courts; and (3) it impermissibly contravened the Court's retroactivity principles in Beam, which the district court concluded were constitutionally based. See generally In re Brichard Securities Litigation, 788 F.Supp. 1098 (N.D.Cal.1992). The district court in Gray v. First Winthrop Corp. concluded that there was no Klein violation because Congress had changed the underlying substantive law with section 27A. Still, the district court there found section 27A violated Beam's retroactivity principles, which the court deemed to be constitutionally based.
 
 STANDARD OF REVIEW
 
 13
 The constitutionality of a statute is a question of law which we review de novo. Seattle Audubon Soc'y v. Robertson, 914 F.2d 1311, 1314 (9th Cir.1990), rev'd on other grounds, --- U.S. ----, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992).
 
 
 14
 A court should invalidate a statutory provision only " 'for the most compelling constitutional reasons.' " Mistretta v. United States, 488 U.S. 361, 384, 109 S.Ct. 647, 661, 102 L.Ed.2d 714 (1989) (quoting Bowsher v. Synar, 478 U.S. 714, 736, 106 S.Ct. 3181, 3193, 92 L.Ed.2d 583 (1986) (Stevens, J., concurring)). Moreover, courts are obliged to impose a saving interpretation of an otherwise unconstitutional statute so long as it is "fairly possible to interpret the statute in a manner that renders it constitutionally valid." Communications Workers of Am. v. Beck, 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988); Robertson, --- U.S. at ----, 112 S.Ct. at 1414.
 
 DISCUSSION
 I. Separation of Powers
 
 15
 Appellees contend that section 27A violates the separation of powers doctrine (1) by "prescrib[ing] a rule for the decision of a cause in a particular way" without amending or modifying the underlying substantive law, in violation of Klein and its progeny, and (2) by impermissibly interfering with the adjudicatory process and tampering with the effect of final judgments.
 
 
 16
 A. Klein and Changes in the Underlying Substantive Law
 
 
 17
 Appellees rely heavily on Klein, which they contend stands for the proposition that the Constitution prohibits Congress from directing the application of a rule of decision in a pending case without changing the underlying substantive law.
 
 
 18
 Klein involved a suit by the administrator of an estate that had been seized by the government during the Civil War. The suit was based on the Abandoned and Captured Property Act of March 12, 1863, 12 Stat. 820 ("ACPA"), which provided that noncombatant property owners who could prove that they had not "given any aid or comfort" to the rebellion were entitled to recover their seized property. President Lincoln subsequently granted a full pardon to any participant in the rebellion who would take an oath, affirming loyalty to the Union. The Court of Claims held that Klein was entitled to the proceeds from the government's sale of the decedent's property because the decedent took the amnesty oath which cured his participation in the rebellion. In United States v. Padelford, 76 U.S. (9 Wall.) 531, 19 L.Ed. 788 (1870), the Supreme Court held that the Presidential pardon purged individuals of any offenses they may have committed against the United States and relieved them of any penalties they otherwise may have incurred.
 
 
 19
 Congress then enacted a proviso into the appropriations bill for the Court of Claims directing that no pardon was to be admissible in evidence as the requisite proof of loyalty for purposes of the ACPA, and that a claimant's receipt of a pardon was to be treated as conclusive proof that the recipient had, in fact, aided and comforted the rebellion. The Supreme Court held the proviso unconstitutional for two reasons. First, it "prescribe[d] a rule of decision of a cause in a particular way," and therefore "passed the limit which separates the legislative from the judicial power." 80 U.S. (13 Wall.) at 146-47. Second, it "impair[ed] the effect of a pardon, and thus infring[ed] the constitutional power of the Executive." Id. at 147.
 
 
 20
 This circuit has interpreted Klein and related Supreme Court authority, e.g. Pennsylvania v. The Wheeling and Belmont Bridge Co., 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1856); United States v. Sioux Nation of Indians, 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980), as establishing a two-part, disjunctive test: The constitutional principle of separation of powers is violated where (1) "Congress has impermissibly directed certain findings in pending litigation, without changing any underlying law," or (2) "a challenged statute [is] independently unconstitutional on other grounds." Seattle Audubon Soc'y v. Robertson, 914 F.2d 1311, 1315-16 (9th Cir.1990), rev'd on other grounds, --- U.S. ----, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992); see also Grimesy v. Huff, 876 F.2d 738, 744-45 (9th Cir.1989), cert. denied, --- U.S. ----, 111 S.Ct. 1620, 113 L.Ed.2d 718 (1991). Section 27A violates neither prong of this two part test.
 
 
 21
 1. Changes in the Underlying Substantive Law
 
 
 22
 As the vast majority of courts addressing the question have concluded, Section 27A changes the underlying substantive law. See, e.g., Anixter v. Home-Stake Prod. Co., 977 F.2d 1533, 1545 (10th Cir.1992) ("Section 27A does not direct certain factual findings or impose a rule of decision for § 10(b) claims. It changes the law."); Henderson v. Scientific-Atlanta, Inc., 971 F.2d 1567, 1573 (11th Cir.1992) ("[S]ection 27A does implement a change in the law."). Section 27A does not usurp the courts' adjudicatory function, but instead prescribes a new statute of limitations for the judiciary to apply in all § 10(b) litigation pending on June 19, 1991. See Anixter, 977 F.2d at 1546. As the Eleventh Circuit reasoned: "The Act does not require courts to make any particular findings of fact or applications of law to fact. Any effect on pending cases is solely a result of a change in the underlying law." Henderson, 971 F.2d at 1573.
 
 
 23
 It is not seriously argued that Congress may not override a judicial interpretation of a statute. Common examples of this practice include the Civil Rights Act of 1991, 105 Stat. 1071 (1991), and the Civil Rights Restoration Act of 1987, 102 Stat. 28 (1988). See also William N. Eskridge, Jr., Overriding Supreme Court Statutory Interpretation Decisions, 101 Yale L.J. 331 (1991) (discussing over one hundred examples in the past twenty years of Congress' overriding Supreme Court interpretations of statutes); Abner J. Mikva and Jeff Bleich, When Congress Overrules the Court, 79 Cal.L.Rev. 729, 730-31 (1991) ("Congressional overruling of a Supreme Court decision is not a particularly exceptional event."). Moreover, it is of no constitutional consequence that section 27A affects, or is even directed at, a specific judicial ruling so long as that legislation modifies the law. See Pennsylvania v. Wheeling and Belmont Bridge Co., 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1856); see also Robertson, --- U.S. at ----, 112 S.Ct. at 1414 (specific reference to two pending cases in legislation itself not constitutionally fatal); Seattle Audubon Soc'y, 914 F.2d at 1315 ("Congress can amend or repeal any law, even for the purpose of ending pending litigation.") (emphasis in original).
 
 
 24
 Here, unsatisfied with the Supreme Court's interpretation of the 1934 Act in Lampf, Congress amended that statute with section 27A. Section 27A "compelled changes in law, not findings or results under old law." Robertson, --- U.S. at ----, 112 S.Ct. at 1413. As Judge Lasker of the Southern District of New York explained:
 
 
 25
 Before Congress adopted § 27A, Lampf dictated a uniform and retroactively-applicable limitations period of one year from the date of discovery of the alleged fraud with a maximum date of repose of three years from the alleged fraud. After Congress acted, the § 10(b) limitations period remained at one year from discovery with a three year cap for cases filed after Lampf, but was changed to the period prevailing in each jurisdiction for cases filed before that decision.
 
 
 26
 Axel Johnson, Inc. v. Arthur Andersen & Co., 790 F.Supp. 476, 479 (S.D.N.Y.1992). We agree that Congress changed the law by modifying the retroactive effect of Lampf.
 
 
 27
 The Supreme Court's recent decision in Robertson, --- U.S. at ----, 112 S.Ct. 1407 (1992), further supports the conclusion that Congress permissibly changed the underlying substantive law when it enacted section 27A. The statute at issue in Robertson was extremely narrow in scope, directing the courts to deem statutory requirements satisfied in two named and numbered environmental cases. The Court nevertheless held that the challenged statute had modified the underlying substantive law rather than directed results under old law. Id. at ---- - ----, 112 S.Ct. at 1413-14. Robertson indicates a high degree of judicial tolerance for an act of Congress that is intended to affect litigation so long as it changes the underlying substantive law in any detectable way. Because Section 27A more clearly and directly changes the underlying substantive law than the appropriation "rider" upheld in Robertson, section 27A amply passes whatever is left of the Klein test.
 
 
 28
 Appellees argue in the alternative that Section 27A's purely retroactive application renders the legislation constitutionally infirm as violating the principle of separation of powers. They assert that to effect the requisite "change in the underlying law" for Klein purposes, Congress had to couple section 27A's retroactive provision with a prospective change in the law. Cases do not support this argument. See, e.g., Henderson, 971 F.2d at 1573 (rejecting similar argument). Congress clearly has the power to amend a statute and to make that change applicable to pending cases. United States v. The Schooner Peggy, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801). Further, the Supreme Court has consistently held that Congress may enact legislation with retroactive effect so long as it comports with Due Process by passing constitutional muster under rational basis scrutiny. See United States v. Sperry Corp., 493 U.S. 52, 64, 110 S.Ct. 387, 396, 107 L.Ed.2d 290 (1989); Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984). In Pension Benefit, the Court explained that while "retroactive legislation does have to meet a burden not faced by legislation that has only future effects," that burden is met "simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." Id. at 730, 104 S.Ct. at 2718. As discussed further infra, section 27A survives rational basis scrutiny.
 
 
 29
 For present purposes, we hold that the purely retrospective effect of section 27A does not violate principles of separation of powers. Appellees' argument conflates separation of powers analysis under Klein and its progeny with retroactivity/selective prospectivity analysis under Beam. Congress clearly changed the underlying substantive law with section 27A, albeit only as to an identifiable subset of existing cases. This congressional action is sufficient for separation of powers purposes under Klein. Separate and independent issues may then arise whether Congress' enactment of the statute is invalid on some other doctrinal ground, such as violating Beam's principles of retroactivity, which Appellees contend are constitutionally based, or not comporting with Due Process.
 
 
 30
 2. Unconstitutionality on "Other Grounds"
 
 
 31
 Section 27A is not independently unconstitutional on other grounds. Cf. Klein, 80 U.S. (13 Wall.) at 147 (unconstitutionally impairing the President's pardon powers); see also Gordon G. Young, Congressional Regulation of Federal Courts' Jurisdiction and Processes: United States v. Klein Revisited, 1981 Wisc.L.Rev. 1189 (1981) (arguing for a narrow reading of Klein ). Congress properly exercised its authority under the Commerce Clause by amending the 1934 Act. So long as section 27A passes rational basis scrutiny under the Due Process Clause (see discussion at III, infra ), the statute is not unconstitutional.
 
 B. Finality
 
 32
 Appellees further argue that section 27A violates the constitutional principle of separation of powers by interfering with the adjudicatory process and "impermissibly direct[ing] the courts to reverse final judgments." In re Brichard Sec. Litig., 788 F.Supp. 1098, 1106 (N.D.Cal.1992). We reject this argument because the judgments were not final.
 
 
 33
 The district court in Brichard was persuaded that section 27A(b) was unconstitutional because the breadth of its language provided that the parties in the Lampf case itself were entitled to have their case reinstated if they filed an appropriate motion within the allotted time. See id. at 1107. Further, the district court opined that "Congress does not have the power to upset the final judgments of either the Supreme Court or the lower federal courts." Id. Broad reliance on this separation of powers principle is misplaced here, however, because none of these cases involve "final judgments" in the constitutional, separation of powers sense of the term.
 
 
 34
 These cases are properly construed as "pending" cases for separation of powers purposes. See Griffith v. Kentucky, 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 712 n. 6, 93 L.Ed.2d 649 (1987) (judgment is "final" and case is no longer pending only after "the availability of appeal [is] exhausted, and the time for a petition for certiorari [has] elapsed or a petition for certiorari finally [has been] denied"); see also Georgia Ass'n of Retarded Citizens v. McDaniel, 855 F.2d 805, 813 (11th Cir.1988) ("When it so intends, [Congress'] ability to affect the content of a nonfinal judgment in a civil case, through retroactive legislation ceases only when a case's journey through the courts comes to an end."), cert. denied, 490 U.S. 1090, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); de Rodulfa v. United States, 461 F.2d 1240, 1253 (D.C.Cir.) ("[T]he suit is pending until the appeal is disposed of, and until disposition any judgment appealed from it is still sub judice.") (internal quotations omitted), cert. denied, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220 (1972).
 
 
 35
 Because none of the cases here have completed their journey through the appellate process, Congress has the authority to change the underlying substantive law by altering the statute of limitations in a way that affects those pending cases. As Chief Justice Marshall articulated in United States v. The Schooner Peggy, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801):
 
 
 36
 [I]f, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.... [T]he court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed, but in violation of law, the judgment must be set aside.
 
 
 37
 Id., 5 U.S. at 110. As applied to these three cases, Congress' modification of the law does not implicate separation of powers concerns. We express no opinion regarding the constitutionality of section 27A as it applies to cases that were final at the time of its enactment.[2]
 
 
 38
 II. Selective Prospectivity, Retroactivity and Beam
 
 
 39
 Appellees alternatively argue that section 27A is unconstitutional because it violates the principles of retroactivity announced in Beam, --- U.S. ----, 111 S.Ct. 2439. This argument is based on the fundamental misconception that Beam was a constitutionally-based decision. But even if Beam were constitutionally based, it addressed the Court's Article III powers and not Congress' Article I powers.
 
 
 40
 Beam stands for the proposition that once the Supreme Court has announced a new rule and applied it to the parties before the Court, that new rule must be applied by the courts retroactively to all pending cases not barred by procedural requirements or res judicata. --- U.S. at ----, 111 S.Ct. at 2448. The Beam Court rejected the possibility that courts could switch legal rules on and off by applying new rules on a selectively prospective basis; courts cannot "apply a new rule in the case in which it is pronounced, [but] then return to the old one with respect to all others arising on facts predating the pronouncement." Id. at ----, 111 S.Ct. at 2444. Because the Court applied its new statute of limitations rule to the litigants in Lampf, Beam mandated application of that new rule to pending cases. Courts across the land followed the Supreme Court's dictate and dismissed those § 10(b) claims that were not timely filed according to the Court's Lampf rule. A few months later, however, Congress passed section 27A which reinstated the practice of selective prospectivity as applied to the Court's holding in Lampf. Appellees argue that Congress lacks the authority to take such action. This argument assumes that Beam was constitutionally-based.
 
 
 41
 A majority of the Court did not conclude that its retroactivity principles were compelled by the Constitution. As the Tenth Circuit noted, "Beam was carefully crafted to garner a plurality to agree only that retroactive application of a rule of law announced in a case was a matter of choice of law and not of constitutional import." Anixter, 977 F.2d at 1547; see also McCool v. Strata Oil Co., 972 F.2d 1452, 1458 n. 3 (7th Cir.1992) ("[O]nly three (or maybe four) Justices in Jim Beam opined that the practice of applying a new rule to some litigants and not to others is unconstitutional.").
 
 
 42
 In Beam, Justice Souter stressed in his opinion for a plurality of the Court that "[t]he grounds for our decision today are narrow. They are confined entirely to an issue of choice of law...." --- U.S. at ----, 111 S.Ct. at 2448. Justice White emphasized that he was "concur[ring] in the judgment on the narrower ground employed by Justice SOUTER." Id. at ----, 111 S.Ct. at 2449. Only three justices--Justices Blackmun, Marshall and Scalia--adhered to the position that the Court's retroactivity principles were rooted in the Constitution. See id. at ---- - ----, 111 S.Ct. at 2449-2451.
 
 
 43
 The most rational, and the most legally correct, reading of Beam indicates that a majority of the Court failed to hold that retroactivity is required, and selective prospectivity is impermissible, as a matter of constitutional law. Therefore, because Beam's retroactivity principles are not constitutionally based, they are not immune from legislative modification or revision.
 
 
 44
 Even if Beam were constitutionally based, however, that case speaks only to the power of the judiciary under Article III and says nothing about legislative power under Article I. As Justice Scalia clearly stated in his separate concurrence, "I would find both 'selective prospectivity' and 'pure prospectivity' beyond our power," id. at ----, 111 S.Ct. at 2451 (emphasis added)--"[t]hat is the power [under Article III] 'to say what the law is,' Marbury v. Madison [5 U.S.], 1 Cranch 137, 177, 2 L.Ed. 60 (1803), not the power to change it." Id. Justice Blackmun similarly concluded that "prospectivity, whether 'selective' or 'pure,' breaches our obligation to discharge our constitutional function" under Article III. Id. at ----, 111 S.Ct. at 2450 (emphasis added). Nowhere in Beam did any of the Justices address Congress' powers under Article I. Appellees' argument therefore not only misreads Beam as a constitutionally based decision, but also stretches the Court's actual holding far beyond its intended constitutional boundaries.
 
 III. Due Process and Equal Protection
 
 45
 Appellees finally argue that section 27A violates the equal protection guarantee inherent in the Due Process Clause of the Fifth Amendment. As discussed supra, Congress changed the underlying law when it enacted section 27A by modifying what statute of limitations period was to be applied to a particular class of cases (i.e., those pending on June 19, 1991). Appellees assert that Congress' classification scheme does not pass constitutional muster. This argument places a limitation upon Congress that finds no support in the Constitution.
 
 
 46
 Even though there is no explicit equal protection clause in the Fifth Amendment, the equal protection guarantee in the Fourteenth Amendment has been read into the Due Process Clause of the Fifth Amendment through the process of reverse incorporation. See Bolling v. Sharpe, 347 U.S. 497, 500, 74 S.Ct. 693, 695, 98 L.Ed. 884 (1954); Vance v. Bradley, 440 U.S. 93, 94-95 n. 1, 99 S.Ct. 939, 942 n. 1, 59 L.Ed.2d 171 (1979) ("the Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws").
 
 
 47
 As long as a statute does not utilize a suspect classification nor impinge upon a fundamental right, the statute "is to be upheld against equal protection attack if it is rationally related to the achievement of legitimate governmental ends." G.D. Searle & Co. v. Cohn, 455 U.S. 404, 408, 102 S.Ct. 1137, 1141, 71 L.Ed.2d 250 (1982). Section 27A does not implicate fundamental rights. See Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945) (shelter of statutes of limitations "has never been regarded as what is now called a 'fundamental' right," but is instead "good only by legislative grace and ... subject to a relatively large degree of legislative control"). Neither does section 27A involve suspect classifications. See Gerald Gunther, Constitutional Law 636-702 (12th ed. 1991) (discussing race, ethnicity, gender, alienage and illegitimacy as "suspect" and "quasi-suspect" classifications entitled to heightened judicial review). Therefore, we subject section 27A's economic regulation to rational basis scrutiny in order to ensure that the statute's means are rationally related to a legitimate governmental purpose.[3]
 
 
 48
 Congress' purpose in enacting section 27A was to protect those litigants whose § 10(b) complaints were timely when filed, but were then rendered untimely by the Court's decision in Lampf. Addressing this very issue, the Eleventh Circuit concluded: "Protecting these litigants from an unexpected change in the law is a legitimate governmental interest, and section 27A is rationally related to that end." Henderson, 971 F.2d at 1574. We agree with the Eleventh Circuit.
 
 
 49
 Appellees contend that there is no rational basis to support the Act's selection of litigants whose lawsuits were on file on June 19, 1991 for treatment dissimilar to those who fortuitously filed their lawsuits the next day. The Supreme Court has clarified, however, that when Congress is legislating in the general economic sphere, "the reform may take one step at a time, addressing itself to the phase of the problem which seems the most acute to the legislative mind." Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); see also Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981) ("[A] legislature 'may implement [its] program step by step, ... adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations.' " ) (quoting New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976)). Here, Congress chose to address first what it viewed to be the most pressing aspect of the problem: prevention of the irreparable injury that Lampf could cause those who had legitimately and indisputably relied on the state of the law prior to Lampf. As the Eleventh Circuit in Henderson stated:
 
 
 50
 It is not irrational for Congress to limit its remedy to those individuals who have gone so far as to file suit in reliance upon the existing statute of limitations. These individuals will suffer the most concrete injury because they have expended significant time and effort to bring their action, not to mention substantial funds for attorney's fees and court costs.
 
 
 51
 971 F.2d at 1574. We therefore conclude that section 27A passes constitutional muster, amply surviving rational basis scrutiny.
 
 CONCLUSION
 
 52
 When Appellees' sophisticated constitutional arguments are dissected and properly analyzed under the frameworks of analysis that the Supreme Court has established, it becomes clear that they cannot undo what Congress has done. As Justice Blackmun stated in Mistretta, "we conclude, upon close inspection, that petitioner's fears for the fundamental structural protections of the Constitution prove ... 'more smoke than fire.' " 488 U.S. at 384, 109 S.Ct. at 661. Section 27A is a valid and lawful exercise of Congress' constitutional authority under Article I.
 
 
 53
 The district courts' holdings that section 27A is unconstitutional are REVERSED. Case numbers 91-16907 and 92-15986 are REMANDED. The discrete factual and legal questions presented in case numbers 92-15901 and 92-16193 are addressed in unpublished memorandum dispositions. Costs are to be based upon the final judgment in each case.
 
 
 
 [1]
 Other issues that were briefed and argued will be dealt with in the several cases on an individual basis in separate dispositions
 
 
 [2]
 Moreover, the district court in Cope and Simon failed to abide by the "savings clause" that Congress provided in section 27A. See 15 U.S.C. § 78aa-1 Note (1992) ("If any provision of [this section] or any application of any provision thereof to any person or circumstance is held invalid, the remainder of [this section] and the application of any remaining provision of such Act to any other person or circumstance [is] not to be affected by such holding."). Even if the section were unconstitutional as applied to the Lampf litigants, that was not grounds for striking the entire statute as unconstitutional. See also Robertson, --- U.S. at ----, 112 S.Ct. at 1414 (courts have a duty to impose a saving interpretation of an otherwise unconstitutional statute if possible)
 
 
 [3]
 Moreover, the strong deference accorded legislation in the field of national economic policy is no less applicable when legislation has retroactive application. Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984); see also Austin v. City of Bisbee, Arizona, 855 F.2d 1429, 1436 (9th Cir.1988) ("Retroactive application of economic legislation meets the test of due process simply if 'retroactive application of the legislation is itself justified by a rational legislative purpose.' " (quoting Pension Benefit, 467 U.S. at 730, 104 S.Ct. at 2718))