46 F.3d 970
 63 USLW 2505
 Kathryn MOSER; National Association of Telecomputer
Operators, Plaintiffs-Appellees,
v.
FEDERAL COMMUNICATIONS COMMISSION, a federal agency; James
H. Quello, in his capacity as interim Chairman of
the Federal Communications Commission,
Defendants-Appellants.
 No. 93-35686.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 31, 1994.
Decided Feb. 6, 1995.
 
 Mark B. Stern, U.S. Dept. of Justice, Washington, DC, for defendants-appellants.
 Charles F. Hinkle, Stoel Rives Boley Jones & Grey, Portland, OR, for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before: FLETCHER, D.W. NELSON, and RYMER, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 The Federal Communications Commission ("FCC") appeals the district court's ruling on summary judgment that a provision of the Telephone Consumer Protection Act of 1991, 47 U.S.C. Sec. 227, banning prerecorded telemarketing calls violates the First Amendment. The FCC argues as a threshold matter that the district court lacked jurisdiction and, on the merits, that the district court erred in finding that the statute did not constitute a "reasonable fit" with the government's legitimate interest in protecting residential privacy. We hold that the district court had jurisdiction. We reverse on the merits.
 
 
 2
 * Congress held extensive hearings on telemarketing in 1991. Based upon these hearings, it concluded that telemarketing calls to homes constituted an unwarranted intrusion upon privacy. The volume of such calls increased substantially with the advent of automated devices that dial up to 1,000 phone numbers an hour and play prerecorded sales pitches. S.Rep. No. 102-178, 102d Cong., 1st Sess. (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1970. By the fall of 1991, more than 180,000 solicitors were using automated machines to telephone 7 million people each day. Id.
 
 
 3
 In addition to the sheer volume of automated calls, Congress determined that such calls were "more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons" because such calls "cannot interact with the customer except in preprogrammed ways" and "do not allow the caller to feel the frustration of the called party...." Id. at 1972. Customers who wanted to remove their names from calling lists were forced to wait until the end of taped messages to hear the callers' identifying information. Prerecorded messages cluttered answering machines, and automated devices did not disconnect immediately after a hang up. Id. at 1972.[1] In a survey conducted for a phone company, 75 percent of respondents favored regulation of automated calls, and half that number favored a ban on all phone solicitation. Id. at 1970. Although 41 states and the District of Columbia have restricted or banned intrastate automated commercial calls,[2] many states asked for federal legislation because states may not regulate interstate calls. Id.
 
 
 4
 The Telephone Consumer Protection Act, Pub.L. No. 102-243, 105 Stat. 2394-2402 (1991), an amendment to the Communications Act of 1934, was passed on December 20, 1991, to take effect a year later. It provides in part:
 
 
 5
 It shall be unlawful for any person within the United States
 
 
 6
 ... (B) to initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)....
 
 
 7
 47 U.S.C. Sec. 227(b)(1).
 
 
 8
 Under the statute, prerecorded messages may be used only if a live operator introduces the message or if the consumer consents. All live solicitation calls, as well as automated calls to most businesses, are permitted. The statute authorizes the FCC to enact limited exemptions from the ban, including an exemption for calls not made "for a commercial purpose."[3] The FCC adopted regulations on September 17, 1992, that exempted calls by tax-exempt, nonprofit organizations. 47 C.F.R. Sec. 64.1200(c)(4).
 
 II
 
 9
 The nonprofit National Association of Telecomputer Operators ("NATO") and its president, Kathryn Moser, filed suit on November 12, 1992, seeking injunctive relief and a declaratory judgment. NATO alleged that the law created a content-based restriction not narrowly tailored to further a substantial government interest, in violation of the First Amendment. It also claimed that the statute violated the Equal Protection Clause of the Fifth Amendment.
 
 
 10
 The district court granted a preliminary injunction on December 18, 1992. Moser v. FCC, 826 F.Supp. 360, 361 (D.Or.1993). On May 21, 1993, the court granted summary judgment for the plaintiffs, declaring that the statute violated the First Amendment. The court did not reach the Fifth Amendment claim. Id. at 367.
 
 III
 
 11
 First we address the FCC's challenge to the district court's jurisdiction. The FCC claims that the lawsuit should have originated in the court of appeals, which has exclusive jurisdiction over challenges to FCC regulations. 28 U.S.C. Sec. 2341; 47 U.S.C. Sec. 402(a); FCC v. ITT World Communications, Inc., 466 U.S. 463, 468, 104 S.Ct. 1936, 1939, 80 L.Ed.2d 480 (1984). The FCC contends that NATO's challenge necessarily is to the regulations, as the statute does not distinguish between commercial and noncommercial calls.
 
 
 12
 The statute does not distinguish between commercial and noncommercial calls, except as it makes reference to calls not made for a commercial purpose that the FCC is granted permission to exempt by regulation under conditions it may prescribe. This language is permissive, not mandatory. It in no way requires the FCC to adopt such exemptions by regulation, order or otherwise. Appellees insist they expressly challenge the statute and only the statute. The district court has jurisdiction over a challenge to the statute's constitutionality. We note that it is a narrow challenge. It does not reach the regulations which are outside the jurisdiction of the district court. We understand appellees challenge them in a separate proceeding initiated in this court as a petition for review of Commission action. Therefore, we do not review here the FCC's regulation that exempts noncommercial automated calls from its ban.
 
 IV
 
 13
 We review the constitutionality of a statute de novo. Gray v. First Winthrop Corp., 989 F.2d 1564, 1567 (9th Cir.1993).
 
 
 14
 Because the district court held that the statute itself distinguished between commercial and noncommercial calls, it analyzed the statute's constitutionality under the test for regulation of commercial speech articulated in Central Hudson Gas & Electric Corp. v. Public Service Comm'n, 447 U.S. 557, 564, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980) and Board of Trustees v. Fox, 492 U.S. 469, 480, 109 S.Ct. 3028, 3034, 106 L.Ed.2d 388 (1989). Moser v. FCC, 826 F.Supp. at 363.
 
 
 15
 Because nothing in the statute requires the Commission to distinguish between commercial and noncommercial speech, we conclude that the statute should be analyzed as a content-neutral time, place, and manner restriction. It regulates all automated telemarketing calls without regard to whether they are commercial or noncommercial. However, we note that the tests for time, place, and manner restrictions for content-neutral speech and regulations for commercial speech regulations are essentially identical. Fox, 492 U.S. at 477, 109 S.Ct. at 3033. The government may impose reasonable restrictions on the time, place, or manner of protected speech, provided that the restrictions "are justified without reference to the content of the restricted speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989) (quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984)).
 
 
 16
 NATO does not challenge the government's significant interest in residential privacy, and does not dispute that curbs on telemarketing advance that interest. Rather, it asserts that a selective ban on automated, commercial calls is unjustified because there is no evidence that such calls are more intrusive than either "live" or noncommercial calls. The district court reasoned that, because prerecorded calls constitute a fraction of all telemarketing calls,[4] a selective ban on these calls would not advance the governmental interest in protecting privacy. Moser v. FCC, 826 F.Supp. at 366. The court relied heavily upon City of Cincinnati v. Discovery Network, --- U.S. ----, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), in which the Supreme Court rejected a selective ban on commercial newsracks on the ground that such newsracks posed no greater threat to safety and aesthetics than noncommercial newsracks.
 
 
 17
 Because the statute does not require that the FCC distinguish between commercial and noncommercial calls, the appropriate inquiry is whether a ban on automated telemarketing calls is narrowly tailored to the residential privacy interest, and whether ample alternative channels of communication remain open.
 
 
 18
 There was significant evidence before Congress of consumer concerns about telephone solicitation in general and about automated calls in particular. Congress made extensive findings. See supra at ---- - ----, 113 S.Ct. at 1506-07. The district court did not give sufficient weight to these findings. "When Congress makes findings on essentially factual issues ... those findings are of course entitled to a great deal of deference, inasmuch as Congress is an institution better equipped to amass and evaluate the vast amounts of data bearing on such an issue." Walters v. Natinal Ass'n of Radiation Survivors, 473 U.S. 305, 331 n. 12, 105 S.Ct. 3180, 3194 n. 12, 87 L.Ed.2d 220 (1985). Such deference does not foreclose the court's independent judgment of the facts bearing on an issue of constitutional law. Sable Communications v. FCC, 492 U.S. 115, 129, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989).
 
 
 19
 We conclude that Congress accurately identified automated telemarketing calls as a threat to privacy. Further, Congress could regulate a portion of these calls without banning all of them. The Supreme Court has repeatedly stated that "underinclusiveness" may be the basis of a First Amendment violation only when a regulation represents an "attempt to give one side of a debatable public question an advantage in expressing its views to the people." City of Ladue v. Gilleo, --- U.S. ----, ----, 114 S.Ct. 2038, 2043, 129 L.Ed.2d 36 (1994) (citing First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 785-86, 98 S.Ct. 1407, 1420-21, 55 L.Ed.2d 707 (1978)). The ban on automated, prerecorded calls is not an attempt to favor a particular viewpoint.
 
 
 20
 In United States v. Edge Broadcasting Co., --- U.S. ----, ---- - ----, 113 S.Ct. 2696, 2706-08, 125 L.Ed.2d 345 (1993), the Supreme Court upheld a ban on the broadcast of lottery advertisements by radio stations licensed in states without lotteries, despite evidence that listeners along state borders would be bombarded by ads broadcast by stations in states with lotteries. The Court said, "Nor do we require that the Government make progress on every front before it can make progress on any front.... [T]he Government may be said to advance its purpose by substantially reducing lottery advertising, even where it is not wholly eradicated." Id. at ----, 113 S.Ct. at 2707; see also R.A.V. v. City of St. Paul, --- U.S. ----, ----, 112 S.Ct. 2538, 2545, 120 L.Ed.2d 305 (1992) (holding that "the First Amendment imposes not an 'underinclusiveness' limitation but a 'content discrimination' limitation"); Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 512, 101 S.Ct. 2882, 2895, 69 L.Ed.2d 800 (1981) (upholding distinction between on-site and off-site on billboards); Curtis v. Thompson, 840 F.2d 1291, 1303 (7th Cir.1988) (stating that claim that statute regulating real estate solicitations is underinclusive "asks us to second-guess the Illinois General Assembly and hold the statute unconstitutional ... because we may believe that Illinois could have prohibited more expressive contact").
 
 
 21
 Such is the case here. Congress may reduce the volume of intrusive telemarketing calls without completely eliminating the calls.
 
 
 22
 The district court also found that Congress had failed to consider adequately less restrictive alternatives. Moser v. FCC, 826 F.Supp. at 367. This conclusion is at odds with the court's finding that Congress considered and rejected less restrictive forms of regulation, including a bill that would have required solicitors to give their names, addresses, and phone numbers in their messages and to use machines with certain disconnect features. Id. at 365.
 
 
 23
 The restrictions in the Act leave open many alternative channels of communication, including the use of taped messages introduced by live speakers or taped messages to which consumers have consented, as well as all live solicitation calls. That some companies prefer the cost and efficiency of automated telemarketing does not prevent Congress from restricting the practice. Kovacs v. Cooper, 336 U.S. 77, 88-89, 69 S.Ct. 448, 454, 93 L.Ed. 513 (1949) ("That more people may be more easily and cheaply reached ... is not enough to call forth constitutional protection for what those charged with public welfare reasonably think is a nuisance when easy means of publicity are open.").
 
 Conclusion
 
 24
 The provision in the Telephone Consumer Protection Act of 1991 banning automated, prerecorded calls to residences is content-neutral. Congress adequately demonstrated that such calls pose a threat to residential privacy. The ban is narrowly tailored to advance that interest, and leaves open ample alternative channels of communication. Thus, it does not violate the First Amendment.
 
 
 25
 REVERSED.
 
 
 
 [1]
 Appellants contend that newer automated machines disconnect when they reach an answering machine, and terminate the call within one second of a hang up
 
 
 [2]
 Three state statutes have faced constitutional challenges. The Minnesota statute was upheld in Humphrey v. Casino Marketing Group, Inc., 491 N.W.2d 882 (Minn.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1648, 123 L.Ed.2d 269 (1993). The New Jersey statute was found unconstitutional in Lysaght v. New Jersey, 837 F.Supp. 646 (D.N.J.1993), and the Oregon statute was found to violate the Oregon constitution in Moser v. Frohnmayer, 315 Or. 372, 845 P.2d 1284 (1993)
 
 
 [3]
 Section 227(b) reads:
 ... (2) REGULATIONS; EXEMPTIONS AND OTHER PROVISIONS.--The Commission shall prescribe regulations to implement the requirements of this subsection. In implementing the requirements of this subsection, the Commission--
 ... (B) may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe--
 (i) calls that are not made for a commercial purpose; and
 (ii) such classes or categories of calls made for commercial purposes as the Commission determines--
 (I) will not adversely affect the privacy rights that this section is intended to protect; and
 (II) do not include the transmission of any unsolicited advertisement.
 
 
 [4]
 The district court adopted NATO's estimate that only 3 percent of all solicitation calls are taped. However, the FCC contends that 17-30 percent of telemarketing calls are automated