166 F.3d 986
 99 Cal. Daily Op. Serv. 785, 1999 Daily
Journal D.A.R. 961
COOK INLET TREATY TRIBES; Chickaloon Native Village;
Eklutna Native Village; Ninilchik Native Village;
Seldovia Village Tribe; and Knik
Tribe, Plaintiffs-Appellants,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee,
and
Southcentral Foundation; and Cook Inlet Region, Inc.,
Intervenors-Defendants-Appellees.
 No. 97-35254.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 8, 1998.
Decided Jan. 28, 1999.
 
 David S. Case, Copeland, Landye, Bennett and Wolf, Anchorage, Alaska, for the plaintiffs-appellants.
 Andrew C. Mergen, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., for defendant-appellee Donna E. Shalala, Secretary of Health and Human Services.
 Barbara E. Karshmer, Alexander and Karshmer, Berkeley, California, for the intervenors-defendants-appellees.
 Appeal from the United States District Court for the District of Alaska; H. Russell Holland, District Judge, Presiding. D.C. No. CV-94-00589-HRH.
 Before: REAVLEY,* GRABER, and McKEOWN, Circuit Judges.
 McKEOWN, Circuit Judge:
 
 
 1
 The central question in this case is whether a health services compact administered by an Alaska Native Regional Corporation under the Indian Self-Determination and Education Assistance Act ("ISDEA"), 25 U.S.C. §§ 450a-450n, requires the approval of Alaska Native villages that are neither parties to the compact nor situated within the specific area serviced under the compact. As to the parties here, Congress answered this question in the negative in legislation passed after this appeal was filed. The appeal is now moot and we dismiss it.BACKGROUND
 
 
 2
 In an effort to shift administration of health services and other programs from the federal government to tribal organizations, the ISDEA authorizes the Secretaries of the Interior and Health and Human Services to "compact" with Indian tribes to provide funding for Indian-run services programs. 25 U.S.C. § 450f note. The subject of this litigation is a health services compact that the Indian Health Service ("IHS"), an agency of the Department of Health and Human Services, awarded in 1994 to Cook Inlet Region, Inc. ("CIRI"), an Alaska Native Regional Corporation and Indian tribe. See 43 U.S.C. § 1602(g); 25 U.S.C. § 450b(e); see also Cook Inlet Native Ass'n v. Bowen, 810 F.2d 1471, 1476 (9th Cir.1987). The compact is known as the Alaska Tribal Health Compact.
 
 
 3
 Under the compact, CIRI, through its designated health care provider, appellee Southcentral Foundation ("SCF"), provides health care services to Alaska Natives and American Indians living in the Municipality of Anchorage (excluding the village of Eklutna) and in the Matanuska-Susitna Valley (excluding the villages of Knik and Chickaloon), a rural area north of Anchorage. The services are funded through an Annual Funding Agreement that has been renewed every year since 1995.
 
 
 4
 Five Alaska Native villages in the Cook Inlet region of Alaska, and the voluntary association to which four of them belong (collectively, "the Villages"),[1] challenge the award of the compact, claiming that the IHS was required to seek the Villages' approval before awarding the compact to CIRI. Relying primarily on a joint Department of the Interior and Department of Health and Human Services regulation, the Villages argue that the IHS must have the approval of those tribes within the "geographic area" to be served by the compact. See 25 CFR § 900.8(d)(1).[2] The Villages also point to the IHS's 1981 administrative guidelines governing tribal clearances of ISDEA contracts as support for their claimed right of approval. See 46 Fed.Reg. 27178 (1981). The guidelines state that the IHS must seek authorizing resolutions "from all the Alaska Native villages in the local area that will use the facility or receive the service" before compacting with a regional organization to provide services. Id. Appellees counter that the Villages here are outside the compact's specific service area and hence have no approval rights. See 25 CFR § 900.8(d)(1) (requiring a tribal organization to obtain authorizing resolutions from those tribes "located within the specific area it proposes to serve").
 
 
 5
 The Villages also contest the compact's authorization for CIRI to provide services outside the urban Anchorage area, specifically to Alaska Natives in the Matanuska-Susitna Valley. In the Villages' parlance, the population from the Matanuska-Susitna Valley was, without approval of the Villages, "attributed" to CIRI's compact for funding purposes.
 
 
 6
 The Villages sought a declaratory judgment that the compact was unlawful and an injunction preventing its implementation until the proper approvals by the Villages had been granted. The district court properly focused on the relationship between approval requirements and geographic service areas. After determining that all of the Villages except Eklutna lacked standing to bring suit, the district court granted summary judgment for defendants on the ground that neither the ISDEA nor the IHS's own regulations and guidelines required the IHS to obtain authorizing resolutions from any of the Villages before awarding the compact to CIRI/SCF. The district court did not have the benefit of later-enacted legislation that directly addressed the approval issue.
 
 ANALYSIS
 I. Mootness
 
 7
 The twin pillars of standing and "case or controversy" go to the heart of Article III jurisdiction. The corollary to these principles is that federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists. Mootness can be characterized as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (quoting Henry Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). "Mootness, like the related doctrine of standing, restricts judicial power to the decision of cases and controversies, so that our elected government retains the general power to establish social policy." Nome Eskimo Community v. Babbitt, 67 F.3d 813, 815 (9th Cir.1995) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).
 
 
 8
 Because we are concerned with threshold jurisdictional issues, we sought supplemental briefing on the question of mootness. Appellees contend that Section 325(d) of the Department of the Interior and Related Agencies Appropriations Act, Pub.L. No. 105-83, 111 Stat. 1543, 1598-99 (1997), enacted while this appeal was pending, renders this appeal moot. The Villages insist that Section 325(d) does not have that effect because the statute is not applicable to them and because the IHS still may not " 'attribute' the population of one geographic area [the Matanuska-Susitna Valley] (and the associated per capita funding) to pay for services to be provided in another area." We disagree with the Villages and conclude that the appeal is moot. Although we seriously question whether any of the Villages, including Eklutna, had standing, we need not resolve that issue because of our decision on mootness. See Arizonans for Official English v. Arizona, 520 U.S. 43, 66-67, 117 S.Ct. 1055, 1068, 137 L.Ed.2d 170 (1997) (deciding mootness issue without first determining standing "because the former question, like the latter, goes to the Article III jurisdiction of this Court and the courts below, not to the merits of the case").
 
 
 9
 The district court held that the IHS's "priority guidelines" did not require Village approval before the compact could be awarded. On appeal, the Villages framed the central issue in terms of the approval requirement: "whether the IHS acted contrary to the ISDEA and applicable IHS regulations and practice in refusing to allow the villages of Eklutna, Knik and Chickaloon to approve the CIRI/SCF compact."
 
 
 10
 While this appeal was pending, Congress definitively answered that question: no approval is required. Section 325(d) provides that CIRI, through SCF,
 
 
 11
 is hereby authorized to enter into contracts or funding agreements under [the ISDEA] for all services provided at or through the Alaska Native Primary Care Center or other satellite clinics in Anchorage or the Matanuska-Susitna Valley without submission of any further authorizing resolutions from any other Alaska Native Region, village corporation, Indian Reorganization Act council, or tribe, no matter where located.
 
 
 12
 Pub.L. No. 105-83, 111 Stat. 1543, 1598 (1997) (emphasis added).
 
 
 13
 The Villages' claims for relief must be scrutinized to assess whether this legislation moots the case. Unless we can grant effective relief, we have no jurisdiction to entertain the appeal and the appeal must be dismissed. Public Utilities Comm'n of the State of California v. Federal Energy Regulatory Comm'n, 100 F.3d 1451, 1458 (9th Cir.1996); see also Sierra Club v. United States Forest Serv., 93 F.3d 610, 614 (9th Cir.1996) ("An action is moot if the court cannot grant any effective relief.") (citation omitted).
 
 
 14
 The Villages earlier dismissed their claim for damages and now seek only prospective relief. The essence of their single remaining claim is that the Villages must approve the compact and associated future funding agreements.[3] They do not seek the invalidation of any past funding agreements, nor do they seek damages or disgorgement of any monies--the Villages want only a declaration that the 1994 compact was invalid and an injunction against "carrying out" the compact.
 
 
 15
 We lack the power to grant the Villages injunctive or declaratory relief because Congress, in enacting Section 325(d), settled the Villages' approval claim.[4] See Bunker Ltd. Partnership v. United States, 820 F.2d 308, 311 (9th Cir.1987) ("When intervening legislation has settled a controversy involving only injunctive or declaratory relief, the controversy has become moot."); United States v. Alder Creek Water Co., 823 F.2d 343, 345 (9th Cir.1987) ("A case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries.").
 
 
 16
 Even if the compact arguably required Village approval at the outset, Congress has now authorized CIRI, through SCF, to enter into contracts and the very funding agreements contemplated by the compact, without the approval of any village or tribe.[5] Given manifest congressional approval of the CIRI compact and associated funding agreements, we cannot grant the Villages any effective declaratory relief. See Nome Eskimo Community, 67 F.3d at 816 ("[A] declaratory judgment may not be used to secure judicial determination of moot questions."); Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 911 F.2d 1331, 1335 (9th Cir.1990) ("It would be pointless" to grant injunctive or declaratory relief as to moot claims). Similarly, because the very essence of "carrying out" the compact is to fund the services on an annual basis, we cannot grant the Villages the injunctive relief they seek. Section 325(d) expressly authorizes CIRI/SCF to enter into "funding agreements" under the ISDEA without seeking the approval of any village or tribe, "no matter where located." See State of Nevada v. Watkins, 943 F.2d 1080, 1084 (9th Cir.1991) (declining to enjoin administrative action where injunction would contravene intervening legislative decision). The legislation effectively removed any claim or requirement for approval. The Villages' appeal is therefore moot. The Villages do not argue, and we do not find, that any exception to the mootness doctrine is applicable here. We express no view on whether the Villages' approval was required before enactment of Section 325(d).
 
 II. Separation of Powers
 
 17
 The Villages argue that even if Section 325(d) moots their claim, the legislation violates the constitutional principle of the separation of powers because it dictates the result of this litigation. We reject the Villages' separation of powers challenge because Section 325(d) changes the underlying substantive law and does not direct specific findings in the litigation.
 
 
 18
 The separation of powers doctrine is violated "where (1) Congress has impermissibly directed certain findings in pending litigation, without changing any underlying law, or (2) a challenged statute [is] independently unconstitutional on other grounds." Gray v. First Winthrop Corp., 989 F.2d 1564, 1568 (9th Cir.1993) (citations omitted). The Villages challenge Section 325(d) only under the first prong of this test.
 
 
 19
 Relying on Robertson v. Seattle Audubon Soc'y, 503 U.S. 429, 439, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), the Villages claim that, in enacting Section 325(d), Congress did not amend the law, but rather attempted to decide this litigation. Robertson, however, is of no help to the Villages. The statute in Robertson--an appropriations rider like Section 325--set out what constituted "adequate consideration for the purpose of meeting the statutory requirements" that were the basis for the lawsuit in that case. The statute even included the cases by name and docket number. Robertson, 503 U.S. at 435, 112 S.Ct. 1407. The Supreme Court nonetheless found that the statute was constitutional because it "compelled changes in law, not findings or results under old law." Id. at 439, 112 S.Ct. 1407.
 
 
 20
 We have since recognized that Robertson "indicates a high degree of judicial tolerance for an act of Congress that is intended to affect litigation so long as it changes the underlying substantive law in any detectable way." Gray, 989 F.2d at 1570. In Gray, we rejected a separation of powers challenge to Section 27A of the Securities Exchange Act of 1934, which altered the retroactivity of the statute of limitations applicable to Section 10(b) actions after the Supreme Court's decision in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Gray, 989 F.2d at 1570. Hence, neither a remedial purpose nor specificity dooms corrective legislation.
 
 
 21
 Like Section 27A, Section 325(d) "more clearly and directly changes the underlying substantive law than the appropriation 'rider' in Robertson." Id. Section 325 effected a general restructuring of the means for delivery of health services to Alaska Natives by authorizing a new consortium for the provision of statewide health services. The streamlined administration, the general provisions of Section 325(a) and the specific provisions of Section 325(d) relating to CIRI make clear that the contracts or funding agreements are authorized without "any further authorizing resolutions from any other village or tribe, no matter where located."
 
 
 22
 Section 325(d) substantively changes the approval process by removing the requirement of obtaining authorizing resolutions from any village, no matter where located, even if that village is specifically served under the compact. Compare 25 CFR § 900.8(d)(1) (requiring authorizing resolutions from "all Indian tribes located within the specific area [the tribal organization] proposes to serve") with Section 325(d) (removing need for authorizing resolutions from any tribe or village, "no matter where located"). Thus, Section 325(d), even if directed at this litigation, does not violate the separation of powers doctrine because it changes the underlying substantive law. See Gray, 989 F.2d at 1569 ("[I]t is of no constitutional consequence that [the legislation] affects, or is even directed at, a specific judicial ruling so long as that legislation modifies the law.").
 
 
 23
 APPEAL DISMISSED AS MOOT; REMANDED WITH INSTRUCTIONS TO DISMISS THE ACTION.
 
 
 
 *
 The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 Eklutna Native Village lies within the boundaries of the Municipality of Anchorage; Chickaloon Native Village and Knik Tribe are in the Matanuska-Susitna Valley; Ninilchik Village and Seldovia Village Tribe are located on the Kenai Peninsula, an area outside either the Municipality of Anchorage or the Matanuska-Susitna Valley. Cook Inlet Treaty Tribes is the voluntary association to which all the Villages except Knik belong
 
 
 [2]
 Section 900.8(d)(1) provides that, "[i]f an Indian tribe or tribal organization proposes to serve a specified geographic area, it must provide authorizing resolution[s] from all Indian tribes located within the specific area it proposes to serve."
 
 
 [3]
 The Villages' attribution argument is not a separate claim but is framed in terms of their claim that approval is required for such attribution. To the extent the attribution claim encompasses a claim for funding or damages, that claim falls within the now-dismissed damages claim
 
 
 [4]
 In addition, other legislation enacted after this appeal was filed makes clear that the Villages are not entitled to any further funding for health services or for any new or expanded ISDEA compact. See Pub.L. No. 105-83, § 326, 111 Stat. 1543, 1599 (1997) (prohibiting the IHS from disbursing health care funds to any Alaska Native village located within the area served by a regional organization); Omnibus Consolidated and Emergency Supplemental Appropriations Act, Pub.L. No. 105-277, § 328, 112 Stat. 2681,--(1998) (prohibiting use of funds appropriated under the Act to enter into any new or expanded self-determination contract or compact)
 
 
 [5]
 The term "funding agreements" in Section 325(d) refers to the agreements authorized by Title III of the ISDEA. See 25 U.S.C. § 450f note (§ 303(a)) ("The Secretaries [sic] is directed to negotiate, and to enter into, an annual written funding agreement with the governing body of a participating tribal government.... Such annual written funding agreement (1) shall authorize the tribe to plan, conduct, consolidate, and administer programs, services and functions of the Department of the Interior and the Indian Health Service of the Department of Health and Human Services.")