**MAN HING IVORY AND IMPORTS, INC., a California corporation, Plaintiff-Appellee,**

v.

**George DEUKMEJIAN,\* Governor of the State of California, et al., Defendants-Appellants.**

No. 82–4303.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 1982.

Decided March 11, 1983.

\* Substitution of parties pursuant to Fed.R. App.P. 43(c).

Joel S. Moskowitz, Deputy Atty. Gen., Sacramento, Cal., for defendants-appellants.

Stanley W. Smith, Niven & Smith, San Francisco, Cal., for plaintiff-appellee.

Before SCHROEDER, FLETCHER, and NORRIS, Circuit Judges.

FLETCHER, Circuit Judge:

This case calls for a determination of the preemptive scope of the Convention on International Trade in Endangered Species of Wild Fauna and Flora, March 3, 1973, 27 U.S.T. 1087, T.I.A.S. No. 8249 (Convention), the Endangered Species Act of 1973, 16 U.S.C. §§ 1531–1543, and federal regulations enacted pursuant to the Endangered Species Act. Appellee Man Hing Ivory and Imports, Inc., is a wholesale importer of African elephant ivory products. In 1977, Man Hing filed suit in district court seeking a declaration that Cal.Penal Code § 653o (West Supp.1981), which prohibits trade in elephant parts within the State of California, is preempted by the Convention and the Endangered Species Act.

After two prior appeals to this court,[1] the district court, in May, 1982, granted appellee's motion for summary judgment on the ground that section 6(f) of the Endangered Species Act, 16 U.S.C. § 1535(f), and regulations promulgated pursuant to the Act, see 50 C.F.R. § 17.40(e) (1981) (allowing trade in African elephant products under special federal permits), preempted California's statutory prohibition on trade in elephant products. The defendants filed a timely appeal from the grant of summary judgment. We note jurisdiction under 28 U.S.C. § 1291 (1976) and affirm.

ANALYSIS

The facts in this case are not in dispute. Appellee wishes to conduct wholesale trade in African elephant ivory within the State of California. In 1970, the California legislature enacted Cal.Penal Code § 653o which currently provides that:

(a) It is unlawful to import into this state for commercial purposes, to possess with intent to sell, or to sell within the state, the dead body, or any part or product thereof, of any alligator, crocodile, polar bear, leopard, ocelot, tiger, cheetah, jaguar, sable antelope, wolf (Canis lupus), zebra, whale, cobra, python, sea turtle, colobus monkey, kangaroo, vicuna, sea otter, free-roaming feral horse, dolphin or porpoise (Delphinidae), Spanish lynx, or elephant.

---

1. In May, 1977, the district court ruled that Cal.Penal Code § 653o was not preempted by federal law. Man Hing appealed this ruling and, during the pendency of the appeal, the U.S. Fish and Wildlife Service adopted 50 C.F.R. § 17.40(e), permitting trade in elephant products. Accordingly, this court remanded the case to the district court for reconsideration in light of the new federal regulations.

In October, 1979, the district court ruled that appellee had no standing to challenge section 653o. Appellee again appealed and we, 652 F.2d 63, again remanded to the district court, finding that appellee had standing to challenge the application to it of Cal.Penal Code § 653o.

Any person who violates any provision of this section is guilty of a misdemeanor and shall be subject to a fine of not less than one thousand dollars ($1,000) and not to exceed five thousand ($5,000) or imprisonment in the county jail for not to exceed six months, or both such fine and imprisonment, for each violation.

A 1976 amendment to the statute added elephants to the proscription of section 653 o. *See* 1976 Cal.Stat. ch. 692, § 1. Absent any preempting federal law, section 653o would clearly prohibit the activities in which appellee wishes to engage.

### A. Convention on International Trade in Endangered Species of Wild Fauna and Flora.

In 1975, President Ford proclaimed the United States' agreement to the Convention on International Trade in Endangered Species of Wild Fauna and Flora. 27 U.S.T. at 1089. The purpose of this multilateral convention is to protect "certain species of wild fauna and flora against over-exploitation through international trade . . . ." *Id.* at 1090 (Preamble).

To accomplish this goal, the Convention lists animals in three categories. In the first are animals that all contracting countries agree are endangered; in the second are animals whose survival may be endangered; and in the third, animals that one country has identified as subject to protective regulation within its jurisdiction. The African elephant is listed in the second category. Trade in the parts or products of animals listed in this category is permitted so long as the trader obtains a trade permit from the country of the animal's origin. Man Hing argues that because it has the required permit, the California prohibition on trade in elephant products cannot be applied to it consistent with the obligations of the United States under the Convention.

 The district court rejected this argument because "[t]he Convention, stand-

ing alone, is in nowise the law of the United States. It is not self-executing. Legislation must be enacted if any of its provisions are to have the force of United States law." The district court may well be correct. We agree that "courts are empowered to give direct legal effect to treaties only insofar as they are self-executing and therefore operate as the law of the land." *Hopson v. Kreps,* 622 F.2d 1375, 1380 (9th Cir.1980); *see Head Money Cases,* 112 U.S. 580, 598, 5 S.Ct. 247, 253, 28 L.Ed. 798 (1884); *see also* L. Henkin, *Foreign Affairs and the Constitution* 156–67 (1972). But we need not decide if the Convention is itself self-executing, since the terms of section 1(a) of Article XIV of the Convention state that the provisions of the Convention shall in no way affect the right of parties to adopt stricter domestic measures regulating or even prohibiting the trade or transport of any part or derivative of certain species, including the African elephant.[2] 27 U.S.T. at 1108. Thus, any rights to import African elephant products purportedly established under the Treaty are conditioned on the absence of prohibitory domestic measures. State laws are deemed domestic measures. *See* Convention, art. XIV, 27 U.S.T. at 1108–09; L. Henkin, *Foreign Affairs and the Constitution* 244–45 & nn. 63–64 at 479–80 (1972) (and cases cited therein). The Convention, therefore, cannot itself preempt California law.

### B. The Endangered Species Act of 1973.

The Endangered Species Act of 1973 implements, *inter alia,* the International Convention on Trade in Endangered Species of Wild Fauna and Flora. *See* 16 U.S.C. §§ 1531(a)(4)(F), 1532(4), 1537a, 1538(c). The Act "represent[s] the most comprehensive legislation for the preservation of endangered species ever enacted by any nation. Its stated purposes [are] 'to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved,' and 'to provide a

---

**2.** The African elephant is listed in Appendix II to the Convention; thus, its parts and derivatives constitute "specimens of species" under section 1(a) of Article XIV pursuant to the definitions of "specimen" and "species" in sections (a) and (b)(ii) of Article I. *See* 27 U.S.T. at 1090, 1108–09.

program for the conservation of such ... species ....'" *TVA v. Hill,* 437 U.S. 153, 180, 98 S.Ct. 2279, 2294, 57 L.Ed.2d 117 (1978) (quoting 16 U.S.C. § 1531(b) (1976)). Whether, as Man Hing argues, such extensive federal legislation preempts otherwise valid state law is a question of Congressional intent. "Congress's purpose is most clear, of course, when the federal statute at issue explicitly prohibits state regulation in the same field." *Pacific Legal Foundation v. State Energy Resources Conservation & Development Commission,* 659 F.2d 903, 919 (9th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350, *cert. granted in companion case Pacific Gas and Electric Co. v. State Energy Resources Conservation & Development Commission,* 659 F.2d 903 (9th Cir.1981), *cert. granted* 457 U.S. 1132, 102 S.Ct. 2956, 73 L.Ed.2d 1348 (1982).

Section 6(f) of the Endangered Species Act, while not explicitly prohibiting state regulation, does directly address the scope of federal preemption intended for the Endangered Species Act. The section provides:

Any State law or regulation which applies with respect to the importation or exportation of, or interstate or foreign commerce in, endangered species or threatened species is void to the extent that it may effectively (1) permit what is prohibited by this chapter or by any regulation which implements this chapter, or (2) prohibit what is authorized pursuant to an exemption or permit provided for in this chapter or in any regulation which implements this chapter. This chapter shall not otherwise be construed to void any State law or regulation which is intended to conserve migratory, resident, or introduced fish or wildlife, or to permit or prohibit sale of such fish or wildlife. Any State law or regulation respecting the taking of an endangered species or threatened species may be more restrictive than the exemptions or permits provided for in this chapter or in any regulation which implements this chapter but not less restrictive than the prohibitions so defined.

16 U.S.C. § 1535(f) (1976). This general language, by its terms, does not forbid state statutes such as California Penal Code § 653*o*.[3] Rather, it allows full implementation of section 653*o* so long as the state statute does not prohibit what the federal statute or its implementing regulations permit. The Act itself nowhere authorizes the importation or sale of African elephant products by permit or by exemption. Indeed, it prohibits the sale or import of endangered species unless such import or sale is specifically authorized or exempted. 16 U.S.C. § 1538(a). Thus, only by reference to the federal regulations adopted to implement the Act may the precise scope of what the Act permits be determined. *See Fouke Co. v. Brown,* 463 F.Supp. 1142, 1144 (E.D. Cal.1979).

## C. Federal Regulation Under the Endangered Species Act of Trade in African Elephant Products.

Section 4 of the Endangered Species Act, 16 U.S.C. § 1533 (1976), delegates to the

---

**3.** In fact, the legislative history of the Endangered Species Act unequivocally shows that Congress meant for federal law to preempt state law pursuant to the first sentence of section 6(f) only where the species was listed as endangered on the federal list and where the federal permission or ban related to interstate or foreign trade in, or exportation or importation of, that species:

The question of preemption of state laws [regarding the taking of listed species] was of great interest during the hearings, due in part to the fact that the language in the Administration bill was susceptible of alternative interpretations. Accordingly, the Committee rewrote the language of the Administration

bill to make it clear that the states would and should be free to adopt legislation or regulations that might be more restrictive than that of the Federal government and to enforce the legislation. *The only exception to this would be in cases where there was a specific Federal permission for or a ban on importation, exploitation or interstate commerce; in any such case the State could not override the Federal action.* In every other respect, the State powers to regulate in a more restrictive fashion or to include additional species remain unimpaired.

H.R.Rep. No. 412, 93d Cong., 1st Sess. 7–8 (1973) (emphasis added).

Secretaries of Interior and Commerce the power to adopt specific regulations for implementation of the Act. In the exercise of this delegated authority, the Secretaries are empowered to compile a list of threatened or endangered species. *Id.* § 1533(c)(1). The Secretary of Interior is also authorized to adopt regulations for the protection of listed species, *id.* § 1533(d); the scope of such protective regulations may include prohibition of any of the proscribed activities set forth in section 9 of the Act, 16 U.S.C. § 1538.

Pursuant to these powers, the Secretary of the Interior, in May, 1978, added the African elephant to the list of threatened and endangered species. 43 Fed.Reg. 20,504 (1978). The ordinary effect of this listing would be to prohibit trade in African elephant parts or products. 50 C.F.R. § 1731(a) (1981); *see* 16 U.S.C. §§ 1533(d), 1538(a)(1)(A). By the terms of section 6(f) of the Act, such a result would be consistent with, and not preemptive of, Cal.Penal Code § 653*o*.

Contemporaneous with the listing of the African elephant, however, the Secretary adopted regulations permitting limited trade in elephant products. 50 C.F.R. § 17.40(e) (1981). These regulations provide:

(e) African elephant (*Loxodona africana*). (1) Except as provided in paragraph (e)(2) or (3) of this section, the prohibitions incorporated into § 17.31(a) shall apply to any African elephant, alive or dead, and to any part, product, or offspring thereof.

(2) The prohibition against importation referred to in paragraph (e)(1) of this section shall not apply to any such wildlife which:

(i) Has originated in the wild in a country that is a party to the Convention on International Trade in Endangered Species of Wild Fauna and Flora, March 3, 1973, TIAS No. 8249; and

(ii) Has been exported from such country of origin, and, in any case of reexportation has been reexported, in accordance with Article IV of such Convention: *Provided,* That: Neither compliance with Article VII, Paragraph 2 of such Convention nor compliance with Article VII, Paragraph 3 of such Convention shall constitute compliance with this paragraph (e)(2)(ii); and

(iii) Has remained in customs control and in an unaltered condition in any country not a party to such Convention that it enters while in transit to the United States.

(3) A special purpose permit may be issued in accordance with the provisions of § 17.32 authorizing any activity otherwise prohibited with regard to such wildlife, upon submission of proof that such wildlife was already in the United States on June 11, 1978 or that such wildlife was imported into the United States in accordance with paragraph (e)(2) of this section.

*Id.* Since no claim is raised here that the Secretary abused his discretion in adopting section 17.40(e) we assume as did the district court, that section 17.40(e) is indeed a "regulation which implements [the Act]" in the sense of section 6(f).

■ The district court determined that the effect of section 17.40(e) is to preempt operation of California Penal Code § 653*o* insofar as the state statute prohibits trade in elephant products by an authorized federal permittee. We agree. The pertinent language of section 6(f) states, "[a]ny state law . . . is void to the extent that it may effectively . . . (2) prohibit what is authorized pursuant to an exemption or permit provided for . . . in any regulation which implements this chapter." 16 U.S.C. § 1535(f) (1976). This language, together with the provisions of 50 C.F.R. § 17.40(e), preclude California's enforcement of section 653*o* where it would prohibit federally authorized trade in African elephant products. *See Pacific Legal Foundation v. State Energy Resources Council,* 659 F.2d at 919 (state statute invalid where it actually conflicts with or impedes full implementation of a Congressional enactment). The state appellants do not seriously contend otherwise.

■ Appellants do, however, argue that one of the conditions of the federal permit alters the otherwise preemptive effect of the federal statute and regulation. Condition 11(B), printed on the front of the federal permit states:

> THE VALIDITY OF THIS PERMIT IS ALSO CONDITIONED UPON STRICT OBSERVANCE OF ALL APPLICABLE FOREIGN, STATE, AND OTHER FEDERAL LAW.

To appellant, this language means that the federal permit authorizing trade in elephant parts is void where such trade is prohibited by state law. Essentially, the state argues that this condition, together with the third sentence of section 6(f) of the Endangered Species Act (permitting state laws more restrictive than the federal statute), allows any state to nullify federally permitted trade in endangered species.

We find appellants' position intriguing [4] but conclude that it ultimately cannot withstand scrutiny. Federal regulations provide that no federal permit for trade in endangered species, including an elephant permit issued pursuant to 50 C.F.R. § 17.40(e),

> shall be construed to relieve a person from any other requirements imposed by a statute or regulation of any state or the United States, including any applicable health, quarantine, agricultural, or customs laws or regulations, or other Service enforced statutes or regulations.

50 C.F.R. § 10.3 (1981). This general provision is the source of condition 11(B). The condition is a part of the printed form used for all federal fish and wildlife permits issued for trade in endangered species. Plainly, condition 11(B) is intended to do no more than implement the section 10.3 requirement that any trade under a federal permit meet state or federal health, quarantine, customs, and agricultural laws. To read the condition more broadly, as appellants would have us do, would open the way for states to impose regulation to supersede federal regulation of trade in imported endangered species or their export or interstate commerce, a form of state preemption clearly contrary to the intent of Congress in passing the Endangered Species Act.[5]

Accordingly, we affirm the district court's well-considered judgment that section 6(f) of the Endangered Species Act, together with 50 C.F.R. § 17.40(e), preempts California's statutory prohibition on trade in African elephant products by a trader who has secured all necessary federal permits.

AFFIRMED.

**4.** As appellants' point out, any reading of the statutes and regulations other than their interpretation apparently affords greater protection to species not listed as threatened or endangered under the federal Act than those that are identified as threatened or endangered because the state is free to prohibit entirely trade in these unlisted species. This apparent anomaly, however, springs from the federal statutes and regulations that permit trade in listed endangered species. Where Congress has expressly sanctioned such a result, we cannot rewrite the statute.

**5.** We note also that the specific language of the condition appellant relies on undercuts appellant's position. The condition subjects the federal permittee only to "applicable" state laws. Were section 653o held applicable to appellee's federal permit, it would truncate the very permit to which it applies. We cannot believe Congress intended such circularity. Moreover, were we to uphold application of section 653o in the face of federal permits allowing trade in elephant products, we would pave the way for a day when an enterprise such as appellee's could secure a federal permit authorizing trade in elephant products and yet find itself unable to conduct such trade within the United States because of widespread state adoption of statutes paralleling California's section 653o. We think it improbable that Congress intended import or export permits under the Endangered Species Act to be revocable by state legislation.