UFO CHUTING OF HAWAII, INC., a Hawaii corporation and K.M.B.S., INC., a Hawaii Corporation, d.b.a. Kaanapali Tours, Plaintiffs,

v.

Peter T. YOUNG, in his capacity as Chair of the Board of Land and Natural Resources, State of Hawaii; Stephen Thompson, in his capacity as Acting Administrator, Division of Boating and Ocean Recreation, Department of Land and Natural Resources, State of Hawaii, Defendants.

Civ. No. 03–00651 SOM/BMK.

United States District Court,
D. Hawai'i.

July 7, 2005.

Dennis Niles, Paul Johnson Park & Niles, Wailuku, HI, for Plaintiffs.

William J. Wynhoff, Office of the Attorney General, Honolulu, HI, for Defendants.

## AMENDED ORDER GRANTING DEFENDANTS' MOTION FOR RELIEF FROM FINAL JUDGMENT

MOLLWAY, District Judge.

### I. INTRODUCTION.

Defendants Peter Young and Stephen Thompson seek relief from this court's order of July 9, 2004, which declares that federal law preempts Hawaii's seasonal parasailing ban, Haw.Rev.Stat. § 200–37(i), as well as all related rules and regulations derived from that statute. Defendants argue that the court's order should be reconsidered in light of an intervening change in federal law that they say allows for the seasonal parasailing ban. The

court agrees and vacates its earlier ruling. Given the recent change in federal law, Haw.Rev.Stat. § 200–37(i), as well as all rules and regulations derived from that statute, are no longer preempted by, or in conflict with, the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361 et seq.

### II. BACKGROUND.

On July 9, 2004, this court issued an order declaring unconstitutional Haw.Rev. Stat. 200–37(i), as well as all rules and regulations derived from that statute. Section 200–37(i) states:

> Between December 15 and May 15 of each year, no person shall operate a thrill craft, or engage in parasailing, water sledding, or commercial high speed boating, or operate a motor vessel towing a person engaged in water sledding or parasailing on the west and south shore of Maui as provided in section 200–38.

The court's ruling was based on the court's reading of the MMPA as expressly preempting Haw.Rev.Stat. 200–37(i), as well as regulations derived from the state statute. The court focused on 16 U.S.C. § 1379(a), which states:

> No State may enforce, or attempt to enforce, any State law or regulation relating to the taking of any species (which term for purposes of this section includes any population stock) of marine mammal within the State unless the Secretary has transferred authority for the conservation and management of that species (hereinafter referred to in this section as "management authority") to the State under subsection (b)(1) of this section.

The court also concluded that Hawaii law was in direct conflict with federal law. Section 17 of the MMPA Amendments of 1994, titled "Human Activities Within

Proximity of Whales," allows individuals to approach "no closer than 100 yards to a humpback whale," Pub.L. No. 103–238, 1994 Stat. 1636, whereas the relevant Hawaii regulations require everyone to stay 300 yards away from humpback whales in designated areas. *See* Haw. Reg. § 13–244–40(c) ("No person shall approach by any means . . . within three hundred yards of any humpback whale within designated cow/calf areas.").

The court held the Hawaii laws and regulations invalid under the Supremacy Clause. Defendants timely appealed to the Ninth Circuit.

On December 8, 2004, while the appeal was pending, the Fiscal Year 2005 Omnibus Appropriations Bill ("Omnibus Appropriations Bill"), H.R. 4818, Public Law 108–447, 118 Stat. 2809, became law. Section 213 of the Omnibus Appropriations Bill ("section 213") states:

Hereafter, notwithstanding any other Federal law related to the conservation and management of marine mammals, the State of Hawaii may enforce any State law or regulation with respect to the operation in State waters of recreational and commercial vessels, for the purpose of conservation and management of humpback whales, to the extent that such law or regulation is no less restrictive than Federal law.

Arguing that this new legislation altered the legal landscape of this court's earlier ruling, Defendants moved for a stay of the order filed on July 9, 2004. Defendants also asked the court to state whether it was willing to reconsider its previous order in light of the new legislation, if and when the Ninth Circuit remanded the case to this court for that purpose. The court granted Defendants' motion for a stay and indicated its willingness to reconsider the previous order. Defendants then asked the Ninth Circuit to remand the case. The Ninth Circuit granted the motion for re-

mand, and this court now entertains Defendants' motion for relief from judgment under Fed.R.Civ.P. 60(b)(5). UFO challenges the constitutionality of section 213.

## III. *LEGAL STANDARD.*

 A party may seek relief from a final judgment, order, or proceeding under Fed.R.Civ.P. 60(b)(5) if "it is no longer equitable that the judgment should have prospective application." *Jeff D. v. Kempthorne*, 365 F.3d 844, 851 (9th Cir. 2004). For relief to be granted, "There must be a 'significant change in facts or law that warrants revision of the decree' and 'the proposed modification must be suitably tailored to the changed circumstance.'" *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255 (9th Cir.1999) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 393, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)).

## IV. *ANALYSIS.*

Section 213's express authorization of State of Hawaii laws and regulations protective of humpback whales alters the preemptive effect of the MMPA. Section 213, as a valid constitutional enactment, renders Hawaii's seasonal parasailing ban no longer preempted by federal law.

### A. *Section 213 Directly Addresses The Bases of this Court's Earlier Ruling.*

Before considering UFO's constitutional challenges to section 213, this court examines whether section 213, if upheld as constitutional, would affect this court's earlier analysis. This court previously held that the MMPA expressly preempted Haw Rev. Stat. § 200–37, and that federal and state laws were in conflict. Section 213 directly addresses both defects.

Section 213 states that "the State of Hawaii may enforce any State law or regu-

lation with respect to the operation in State waters of recreational and commercial vessels, for the purpose of conservation and management of humpback whales." This language expressly authorizes Hawaii to pass laws and regulations relating to the conservation and management of humpback whales. The statute at issue in this case, Haw.Rev.Stat. § 200–37(i), seeks to promote the conservation and management of humpback whales by regulating parasailing operations. By specifically authorizing the State of Hawaii to pass this type of legislation, section 213 eliminates any federal preemption of Haw. Rev.Stat. § 200–37(i).

Section 213, if constitutional, would also resolve any direct conflict between the MMPA and Haw.Rev.Stat. § 200–37(i) This court earlier held that the Hawaii law conflicted with federal law, as the MMPA allowed individuals to approach within 100 yards of marine mammals, while Hawaii regulations required staying 300 yards from marine mammals. Section 213 expressly allows the State of Hawaii to enact regulations that are more restrictive than federal law, thus curing any direct conflict.

UFO urges this court to avoid reaching the constitutional question by holding that section 213 does not apply in any event to Hawaii's seasonal parasailing ban. Section 213 authorizes enforcement of state laws or regulations only "with respect to the operation ... of recreational and commercial vessels." Hawaii's seasonal parasailing ban, UFO argues, is a ban on an activity, not a restriction on the operation of the recreational and commercial vessels with respect to any activity. The court is unpersuaded by this purported distinction: Under Haw.Rev.Stat. § 200–37(i), "Between December 15 and May 15 of each year, no person shall ... engage in parasailing ... or *operate* a motor vessel towing a person engaged in water sledding or parasailing on the west and south shore of

Maui ...." (emphasis added). The Hawaii statute is, on its face, a state law with respect to the operation of recreational and commercial vessels that falls within the scope of section 213.

B. *Section 213 is Valid.*

Having decided that section 213 does directly cover Haw.Rev.Stat. § 200–37(i) and related rules and regulations, as well as the reasons this court previously invalidated that Hawaii law, this court now examines whether section 213 is a valid federal law. UFO contends that section 213 is unconstitutional on two grounds. First, UFO contends that section 213 violates the separation of powers doctrine by dictating a judicial result without amending underlying law. Second, UFO argues that section 213 is not rationally related to any legitimate government interest. The court rejects both arguments.

1. *Section 213 Does Not Violate the Separation of Powers Doctrine.*

Section 213 alters substantive law by changing the preemptive effect of the MMPA. Accordingly, the statute does not violate the separation of powers doctrine. *See Robertson v. Seattle Audubon Soc'y,* 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992); *United States v. Klein,* 13 Wall. 128, 80 U.S. 128, 20 L.Ed. 519 (1871).

Under the test articulated in *Klein,* a congressional statute violates the separation of powers if it "impermissibly direct[s] certain findings in pending litigation, without changing any underlying law." *Cook Inlet Treaty Tribes v. Shalala,* 166 F.3d 986, 990–91 (9th Cir.1999) (quoting *Gray v. First Winthrop Corp.,* 989 F.2d 1564, 1568 (9th Cir.1993)).

In *Klein,* the Supreme Court invalidated a federal law stating that "no pardon or amnesty granted by the President shall be admissible in evidence on the part of any

claimant in the Court of Claims as evidence in support of any claim against the United States." Finding that the act "prescribe[d] a rule for the decision of a cause in a particular way," the Court held that Congress had "passed the limit which separates the legislative from the judicial power." *Id.* at 146–47, 13 Wall. 128. The Court in *Klein* specifically noted that the decision was consistent with *Pennsylvania v. Wheeling and Belmont Bridge Co.,* 59 U.S. 421, 18 How. 421, 15 L.Ed. 435 (1855). In that case, the Court had upheld a statute legalizing a bridge that the Court had previously deemed a nuisance, and converting the bridge into a post road. *Id.* at 430, 18 How. 421. The Court in *Klein* distinguished the two cases, noting that the congressional act in *Wheeling* had changed an underlying law, leaving the Court free to apply its ordinary rules to the changed legal landscape. *Klein,* 80 U.S. at 147, 80 U.S. 128. The statute at issue in *Klein,* by contrast, directed specific judicial findings without ever amending the underlying law. *Id.* at 147–48, 13 Wall. 128.

The Court revisited the *Klein* and *Wheeling* tests in *Robertson,* 503 U.S. at 429, 112 S.Ct. 1407. In *Robertson,* environmental groups challenged section 318 of the Northwest Timber Compromise of 1990 ("the Compromise"). Congress passed the Compromise in response to ongoing litigation over timber harvesting and its effect on the endangered northern spotted owl. *Id.* at 432–33, 112 S.Ct. 1407. Section 318 stated:

> The Congress hereby determines and directs that management of areas . . . is adequate consideration for the purpose of meeting the statutory requirements that are the basis for the consolidated cases captioned *Seattle Audubon Society et al., v. F. Dale Robertson,* Civil No. 89–160 and *Washington Contract Loggers Assoc. et al., v. F. Dale Robertson,* Civil. No. 89–99 (order granting prelim-

inary injunction) and the case *Portland Audubon Society et al., v. Manuel Lujan, Jr.,* Civil No. 87–1160–FR.

*Robertson,* 503 U.S. at 435, 112 S.Ct. 1407.

Arguing that references in the statute to pending litigation were proof of congressional intent to invade the province of the courts, environmentalists argued that the Compromise violated *Klein.* The Court disagreed. The Court held that the Compromise "replaced the legal standards underlying the two original challenges with those set forth in [the new statute] without directing particular applications under either the old or new standards." *Id.* at 437, 112 S.Ct. 1407. The Compromise, the Court concluded, was therefore similar to the statute in *Wheeling* and did not violate the separation of powers. *Id.* at 438, 112 S.Ct. 1407.

The Ninth Circuit has interpreted *Robertson* as indicating "a high degree of judicial tolerance for an act of Congress that is intended to affect litigation so long as it changes the underlying substantive law in any detectable way." *Cook Inlet Treaty Tribes v. Shalala,* 166 F.3d 986, 991 (9th Cir.1999); *Gray v. First Winthrop Corp.,* 989 F.2d 1564, 1570 (9th Cir.1993).

Applying *Robertson,* as well as the high level of deference generally accorded to the constitutionality of federal statutes, *see Gray,* 989 F.2d at 1567, the Ninth Circuit has repeatedly upheld statutes against *Klein* challenges. *See, e.g., Cook Inlet,* 166 F.3d at 991 (declaring constitutional a congressional act authorizing a foundation to provide health care services under the Indian Self–Determination and Education Assistance Act); *Atonio v. Wards Cove Packing Co., Inc.,* 10 F.3d 1485, 1493 (9th Cir.1993) (upholding the civil rights provision barring disparate impact claims filed before a certain date); *Gray,* 989 F.2d at 1570 (upholding an amendment to the Se-

curities Exchange Act changing the limitations period for private civil actions).

In *Apache Survival Coalition v. United States*, 21 F.3d 895 (9th Cir.1994), the court upheld a provision of the Arizona–Idaho Conservation Act of 1988 ("AICA"), Pub.L. No. 100–696, 102 Stat. 4571, against a separation of powers challenge. *See* 21 F.3d at 901. The provision, which dealt with telescope construction in an environmentally and archeologically sensitive area, stated that "the requirements of section 7 of the Endangered Species Act shall be deemed satisfied as to the issuance of a Special Use Authorization for the first three telescopes." *Id.* The plaintiffs in the case argued that this provision dictated the result of an existing court case without changing the underlying law. *Id.*

The Ninth Circuit disagreed, holding that the AICA changed the underlying law and thus did not fall under *Klein.* *Id.* at 902. The court noted that the AICA expressly suspended the requirements of the National Environmental Protection Act with respect to the construction of the first three telescopes and "implicitly suspended . . . and replaced" the requirements of the Endangered Species Act. *Id.* The Ninth Circuit upheld the statute. *Id.* at 904.

Similarly, section 213 does not direct this court to make any specific finding of fact or application of law. Section 213 is far broader than the statutes ultimately upheld in *Robertson* and *Apache Surivial,* which expressly directed results in specifically named cases and telescope construction projects, respectively. *Robertson,* 503 U.S. at 435, 112 S.Ct. 1407, *Apache Survival,* 21 F.3d at 902.

Section 213 also satisfies the second part of the *Robertson* test. Section 213 changes substantive law by amending all federal laws relating to the conservation of marine mammals. The amendment alters the preemptive effect of those federal laws, expressly authorizing the State of Hawaii to enforce its laws and regulations in this area "notwithstanding any other Federal law related to the conservation and management of marine mammals." In short, section 213 exempts Hawaii from 16 U.S.C. § 1379(a), which otherwise preempts state laws and regulations "relating to the taking" of marine mammals.

UFO contends that, to pass judicial scrutiny under *Klein,* section 213 must "involve a change in the substantive provision on which the judgment or decree is based," in this case, the MMPA. Section 213 does not specifically mention 16 U.S.C. § 1379 or any other section of the MMPA, and UFO argues that this silence causes section 213 to dictate a result without amending the underlying law.

No express reference to the MMPA, however, is necessary. By its terms, section 213 applies to "any other Federal law related to the conservation and management of marine mammals." The MMPA is necessarily included, and its preemptive effect is altered by the new legislation.

Section 213 is more explicit in referring to underlying law than the statute upheld in *Robertson.* That statute amended underlying law only by reference to specific cases involving the laws in issue. 503 U.S. at 440, 112 S.Ct. 1407. Section 213's substantive change to the law is a broader and more significant change in the law than the temporary and project-specific amendments addressed in *Robertson* and *Apache Survival.* In *Robertson,* for example, the Compromise affected only those cases identified in the statute by name. 503 U.S. at 440, 112 S.Ct. 1407. Similarly, the appropriation rider in *Apache Survival* affected only the specific telescope projects at issue. 21 F.3d at 902. Here, by contrast, section 213 affects the preemptive effect of all federal statutes on any Hawaii statute in the area. Unlike the statutes upheld in *Robertson* and *Apache Survival,*

section 213 applies beyond the case at hand.

Nor is the court moved by UFO's complaint that section 213 is not entitled to deference because it was passed as a rider to an appropriations bill. "Congress may . . . amend substantive law in an appropriations statute, as long as it does so clearly." *Robertson*, 503 U.S. at 440, 112 S.Ct. 1407. The statute in this case clearly amends the preemptive effect of federal statutes relating to marine mammals.

### 2. *Section 213 Passes Rational Basis Review.*

■ Section 213 exempts only Hawaii from the preemptive effect of federal marine mammal statutes and applies only to laws relating to humpback whales. Arguing that there is no rational basis for distinguishing between Hawaii and other coastal states, or between humpback whales and other marine mammals, UFO concludes that section 213 violates the equal protection clause of the Fourteenth Amendment. The court disagrees.

■ The Supreme Court has articulated the standard for evaluating the constitutionality of statutes that neither implicate fundamental rights nor create suspect classifications:

> [A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.

*Heller v. Doe*, 509 U.S. 312, 319–20, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Further, a State "has no obligation to produce evidence to sustain the rationality of a statutory classification." *Id.* at 320, 113 S.Ct. 2637. Instead, "[a] statute is presumed constitutional and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Id.* at 321, 113 S.Ct. 2637. This standard of review is "highly deferential," *United States v. Hancock*, 231 F.3d 557, 566 (9th Cir.2000), and "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller*, 509 U.S. at 319, 113 S.Ct. 2637 (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)).

Section 213 furthers the legitimate governmental purpose of protecting humpback whales, an endangered species. The statute, as a whole, thus satisfies rational basis review.

UFO fails to meet its burden of proving that there is no rational basis for the geographic classification of the statute, which exempts Hawaii from the preemptive effect of the MMPA. Geographic distinctions in legislative acts have been upheld by the courts, so long as they are rationally related to a legitimate government interest. *See Fort Smith Light & Traction Co. v. Bd. of Improvement*, 274 U.S. 387, 392, 47 S.Ct. 595, 71 L.Ed. 1112 (1927) (the Fourteenth Amendment "does not prohibit legislation merely because it is special, or limited in its application to a particular geographical or political subdivision of the state").

UFO misconstrues its burden of "negativ[ing] every conceivable basis which might support" Congress's decision to allow only Hawaii to escape the preemptive effects of the MMPA. *See Heller*, 509 U.S. at 321, 113 S.Ct. 2637. UFO says that "[t]he State does not suggest a rationale for exempting Hawaii from the preemptive effect of [the MMPA,]" as if it is the State's burden to show a rational basis. At the hearing on the present motion, UFO addressed the issue by arguing that,

in excusing Hawaii from the preemptive effect of the MMPA while ignoring other coastal states, Congress acted irrationally.

Congress, however, could have acted on a variety of grounds. Hawaii is the only island state. Hawaii's challenges in managing its aquatic resources, including marine mammals, are unique. Hawaii's sui generis relationship with its surrounding waters is thus a "conceivable basis" on which Congress might have singled out Hawaii. Hawaii also bears a unique cultural relationship to the ocean and to humpback whales, as the Native Hawaiian culture affords humpback whales great respect. *See* Hawaiian Islands Humpback Whale National Marine Sanctuary Final Environmental Impact Statement/Management Plan, 1997, Ex. DN–11 to Plaintiffs' Motion for Summary Judgment on First Claim For Relief, filed March 3, 2004. Congress has, in other contexts, recognized Hawaii's unique cultural heritage. *See, e.g.*, 42 U.S.C. § 11701 ("The Native Hawaiian people are determined to preserve, develop and transmit to future generations their ancestral territory, and their cultural identity in accordance with their own spiritual and traditional beliefs, customs, practices, language, and social institutions."); 20 U.S.C. § 7512(12) ("[t]he United States has recognized and reaffirmed that Native Hawaiians have a cultural, historic, and land-based link to the indigenous people who exercised sovereignty over the Hawaiian Islands"); *see also Doe v. Kamehameha Schools*, 295 F.Supp.2d 1141, 1174 n. 29 (D.Haw.2003) ("Over eighty-five congressional enactments provide preferences or services to Native Hawaiians."). Congress may thus have considered cultural issues in allowing Hawaii to enforce its own laws.

Of course, it could be argued that it would make more sense for Congress to adopt an approach that covered other states' costal areas or indigenous cultures, or all marine mammals. But rational basis review turns on what is rational, not what someone might consider best. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) ("rational distinctions may be made with substantially less than mathematical exactitude"). Thus, Congress may accord one state or one species more protection than another. Congress may, for instance, value certain animals over others because of the animals' history, relationship with humans, beauty, symbolism, or other characteristics, all of which may cause Congress to extend special protection to a species. UFO establishes no reason for this court to second-guess legislative decisions relating to section 213.

UFO also argues that it is irrational to permit state regulations that protect marine mammals to exceed federal regulations promulgated by the National Oceanic and Atmospheric Administration. The court sees no irrationality at all. Congress may and sometimes does permit states to enact more stringent environmental regulations than the federal government. For example, the Endangered Species Act, 16 U.S.C. § 1535(f), provides, "Any State law or regulation respecting the taking of an endangered species or threatened species may be more restrictive than the exemptions or permits provided for in this chapter or in any regulation which implements this chapter...." This provision has never been deemed unconstitutional. And in *Man Hing Ivory & Imports, Inc. v. Deukmejian*, 702 F.2d 760, 763 n. 3 (9th Cir.1983), the Ninth Circuit, quoting the legislative history to the Endangered Species Act, noted that "the states would and should be free to adopt legislation or regulations that might be more restrictive than that of the Federal government."

UFO further argues that it was "irrational for Congress to presume the State

of Hawaii has the institutional resources ... to determine the need for increased regulation of commercial boating in conserving and managing humpback whales while in Hawaiian waters." UFO, however, offers no evidence that Hawaii lacks institutional resources, or that Congress irrationally vested Hawaii with authority.

### C. UFO's Other Arguments are Unpersuasive.

The heart of UFO's position is the alleged irrationality not of section 213, but of the Hawaii law imposing a seasonal ban on parasailing. But the merits of Haw.Rev. Stat. § 200–37(i) are not in issue on the present motion.

UFO also argues that section 213 deserves "heightened scrutiny" because it allows "enforcement of measures ... that prevent[ ] operators from using their vessels for the single form of coastwise activity for which they were designed, built and licensed by the federal government." In its papers, UFO appears to make a "taking" claim without calling it that. If a taking has occurred, it is effected through Haw.Rev.Stat. § 200–37(i) and its related regulations, not section 213, which merely allows Hawaii to enforce its environmental laws in this area.

■ UFO also appears to be arguing that section 213 violates the Commerce Clause. *See* Opp. Memo at 18 ("Section 213 should be invalidated because it facilitates enforcement of unreasonable state regulation of interstate commerce."). But Congress can itself regulate interstate commerce under the Commerce Clause, and UFO makes no showing that this congressional regulation (as opposed to a state regulation) violates the Commerce Clause. UFO may actually be claiming that it is Haw.Rev.Stat. § 200–37(i) that violates the "dormant commerce clause" by allegedly discriminating against interstate commerce. A state regulation violates the

"dormant commerce clause" if (1) the regulation facially discriminates against interstate commerce; or (2) a regulation that is facially neutral excessively burdens interstate commerce in relation to local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). UFO has not thus far articulated any unique burden to interstate commerce interests, as opposed to local interests, but the court leaves the "dormant commerce clause" challenge for further adjudication. The present motion concerns the effect of section 213 on Hawaii law, not the effect of the "dormant commerce clause" on Hawaii law.

■ Finally, at the hearing on the present motion, UFO argued that section 213 impermissibly deprives UFO of its liberty interests under the Due Process Clause. UFO contended that section 213 deprives UFO of the opportunity to object to governmental action in administrative proceedings. Congress may, however, pass laws that abrogate, or even eliminate, the statutorily created protections of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701–706. The Constitution does not, in guaranteeing rights under the Due Process Clause, guarantee all of the specific procedures laid out in the APA. Section 213 does not violate any constitutional right just because it allows state regulations.

### V. CONCLUSION.

Section 213 is a valid enactment that alters the preemptive effect of the MMPA. Section 213 is an intervening change in controlling law that this court now applies to determine whether Hawaii's seasonal parasailing ban is valid. The court grants Defendants' motion for relief from this court's previous order. The earlier order is hereby vacated. Haw.Rev.Stat. § 200–37(i) and all rules and regulations derived

from that statute are not preempted by the MMPA.

Summary judgment is granted to Defendants as to Count 1 of the Second Amended Complaint. This leaves for adjudication Count 2 of UFO's Second Amended Complaint.

IT IS SO ORDERED.